# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
PAULETTE ANGUIMATE,                       )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )    Civil Action No. 12-791 (RBW)
                                          )
UNITED STATES DEPARTMENT                  )
OF HOMELAND SECURITY,                     )
                                          )
                                          )
        Defendant.                        )
_____)

## MEMORANDUM OPINION

The plaintiff brings this action pursuant to the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552 (2006), seeking the release of a three-page "Assessment to Refer" prepared by an

Asylum Officer for the United States Department of Homeland Security ("DHS").  Complaint

for Declaratory and Injunctive Relief ("Compl.") ¶¶ 1-2, 35-37.  Currently before the Court are

the parties' cross-motions for summary judgment.  Upon careful consideration of the parties'

submissions,[1] the Court concludes for the following reasons that the defendant's motion must be

granted in part and denied in part without prejudice, and the plaintiff's motion must be denied

without prejudice.

_____

[1] In addition to the filings already identified, the Court considered the following submissions and their supporting
exhibits in rendering its decision: the Defendant's Memorandum of Points and Authorities in Support of Its Motion
for Summary Judgment ("Def.'s Mem."); the Defendant's Statement of Material Facts Not in Genuine Dispute in
Support of Its Motion for Summary Judgment ("Def.'s Facts"); the Plaintiff's Memorandum of Points and
Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"); the Plaintiff's Opposition
to Defendant's Statement of Material Facts Not in Genuine Dispute ("Pl.'s Facts Opp'n"); the Plaintiff's Motion for
Summary Judgment; the Plaintiff's Statement of Material Facts not in Genuine Dispute; the Defendant's Reply in
Support of Its Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s
Reply"); the Defendant's Opposition to Plaintiff's Statement of Material Facts Not in Genuine Dispute in Support of
Her Motion for Summary Judgment; the Plaintiff's Reply in Support of Her Motion for Summary Judgment ("Pl.'s
Reply"); and the parties' Joint Status Report, filed January 7, 2013 ("Status Report").

## I. BACKGROUND

The following facts are undisputed.  On January 21, 2011, the plaintiff filed an application for asylum with the United States Citizenship and Immigration Services ("Immigration"), a component of the DHS.  Def.'s Facts ¶ 10.  An Immigration Asylum Officer conducted an interview with the plaintiff concerning her asylum application on May 10, 2011.  Id. ¶ 13.  After determining that the plaintiff's application should be denied, the Asylum Officer prepared a three-page document, known as an "Assessment to Refer" ("Assessment"), summarizing the evidence and explaining the Officer's findings.  Compl. ¶ 35; Def.'s Facts ¶ 14.  Based on the Assessment, Immigration denied the plaintiff's asylum application and referred her to an immigration judge for removal proceedings.  Def.'s Facts ¶ 14; Pl.'s Facts Opp'n ¶ 14.

Immigration then issued the plaintiff a "Referral Notice" on May 24, 2011, stating that "applicants for asylum must credibly establish that they have suffered past persecution or have a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, and that they merit a grant of asylum in the exercise of discretion."  Def.'s Facts ¶ 13 (quotation marks omitted).  The Referral Notice explained that "after careful consideration of all available information and explanations at your asylum interview, your claim was deemed not credible on the basis of the lack of detail(s) on material points."  Id. (quotation marks omitted).

The plaintiff submitted a FOIA request to Immigration on June 29, 2011, seeking various documents relating to her asylum application.  Def.'s Facts ¶¶ 1, 3.  Immigration subsequently produced some responsive records to the plaintiff, but withheld others as exempt from disclosure under the FOIA.  Id. ¶ 4.  The plaintiff administratively appealed Immigration's determination, and specifically "sought an unredacted copy of . . . the 'Assessment to Refer'" prepared by the

Asylum Officer.  Id. ¶ 6.  Immigration denied the plaintiff's administrative appeal, claiming that the Assessment was exempt from disclosure under the FOIA.  Id. ¶ 7.

The plaintiff instituted this action on May 16, 2012.  Her complaint asserts that the defendant's withholding of the Assessment violates (1) the FOIA, (2) the plaintiff's due process right to a fair trial, and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2006).  See Compl. ¶¶ 40-49.  The parties then filed cross-motions for summary judgment.

After the parties completed briefing of their motions, the plaintiff's removal proceedings were conducted before an immigration judge in November 2012.  Status Report ¶ 1.  The DHS did not use the Assessment during the proceedings, nor did it produce the document to the plaintiff.  Id. ¶¶ 2, 5.  At the conclusion of the proceedings on November 30, 2012, the plaintiff was granted asylum.  Id. ¶ 3.

## II.  STANDARD OF REVIEW

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  And "FOIA cases typically and appropriately are decided on motions for summary judgment."  Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (collecting cases).  "[T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester."  Weisberg v. DOJ, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983) (citation omitted).  To satisfy this burden, the agency may rely upon affidavits, declarations, and other exhibits that describe the requested documents and "'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record []or by evidence of

agency bad faith.'" <u>Larson v. Dep't of State</u>, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation

omitted).  Agency affidavits submitted in the FOIA context are, moreover, "accorded a

presumption of good faith."  <u>SafeCard Servs., Inc. v. SEC</u>, 926 F.2d 1197, 1200 (D.C. Cir.

1991).

### III.  ANALYSIS

**A.      The Plaintiff's APA and Due Process Claims**

In her reply brief, the plaintiff "abandons her [t]hird [c]ause of [a]ction, based upon the

APA."  Pl.'s Reply at 2.  Based on this representation, the Court will grant summary judgment as

to the plaintiff's APA claim in the defendant's favor.

As for the plaintiff's due process claim, the basis for this claim was the plaintiff's belief

that the defendant "may use the Assessment against [the p]laintiff in [the i]mmigration [c]ourt,"

and her position that "[i]t is unfair for an agency to use a document against [a p]laintiff in a court

without allowing [the p]laintiff to see it in advance."  Pl.'s Reply at 12; <u>see</u> Compl. ¶¶ 43-46.

However, as previously noted, the plaintiff's proceedings before the immigration court

concluded in November 2012 and the defendant did not use the Assessment during those

proceedings.  Status Report ¶¶ 1-2.   Thus, the plaintiff's due process claim is moot, since it

hinged on the defendant's possible use of the Assessment during the now-concluded immigration

proceedings.  <u>See</u> <u>Clarke v. United States</u>, 915 F.2d 699, 701 (D.C. Cir. 1990) ("Even where

litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to

refrain from deciding it if 'events have so transpired that the decision will neither presently affect

the parties' rights nor have a more-than-speculative chance of affecting them in the future.'")

(citation omitted).  The Court will therefore grant summary judgment to the defendant on the

plaintiff's due process claim.

**B.      The Plaintiff's FOIA Claim**

In evaluating the plaintiff's FOIA claim, the Court will consider, in turn, whether the defendant (1) properly withheld the Assessment as exempt from disclosure, (2) has carried its burden under the FOIA of showing that the Assessment contains no reasonably segregable, non-exempt information, and (3) adequately responded to the plaintiff's FOIA request at the administrative level.

**1.      FOIA Exemption 5 and the Deliberative Process Privilege**

To justify its withholding of the Assessment in full, the defendant has invoked FOIA Exemption 5 and the deliberative process privilege. Def.'s Mem. at 6. Exemption 5 "allows an agency to withhold disclosure of a record if the record meets two requirements: (1) it is an 'inter-agency or intra-agency memorandum[] or letter[]' that (2) 'would not be available by law to a party other than an agency in litigation with the agency.'" McKinley v. Bd. of Govs. of Fed. Reserve Sys., 647 F.3d 331, 335-36 (D.C. Cir. 2011), cert. denied, __ U.S. __, 132 S. Ct. 1026 (2012) (quoting 5 U.S.C. § 552(b)(5)) (alterations in original). In this case, there is no dispute that the Assessment qualifies as an "inter-agency or intra-agency memorandum," so the focus is on the second requirement of Exemption 5. To satisfy this second requirement, "the record must be non-disclosable 'under one of the established civil discovery privileges,'" one of which is "'the deliberative process privilege.'" Id. at 339 (citation omitted).

For a document to qualify for the deliberative process privilege, it "'must be both predecisional and a part of the deliberative process.'" Id. (citation omitted). "[A] document [is] predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006) (citation omitted). Thus, documents qualify for protection under the

privilege "only if they 'reflect[] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy.'" Pub. Citizen, Inc. v. OMB, 598 F.3d 865, 875 (D.C. Cir. 2010) (alteration in original and citation omitted).

The defendant has submitted a declaration of an agency official, Jill A. Eggleston, which describes the Assessment as a "three page document" containing (1) "a distillation of essential information from the [p]laintiff's interview with the asylum officer," and (2) "a detailed analysis of pertinent parts of the [p]laintiff's interview and the asylum officer's determination that the [p]laintiff's story lacked credibility." Def.'s Mem., Exhibit ("Ex.") 1 (Declaration of Jill A. Eggleston ("Eggleston Decl.")) ¶ 21. Invoking the elements of the deliberative process privilege, the declaration states that the Assessment is predecisional "because it predate[d] . . . [Immigration's] decision to not grant asylum to the [p]laintiff," and "form[ed] the basis for the decision not to grant the [p]laintiff asylum and instead refer her to an immigration judge for removal proceedings." Id. ¶ 24. The declaration adds that the Assessment is deliberative because "[t]he decision making process documented by the [Immigration] asylum officer in the Assessment . . . was an essential part of the [Immigration] deliberative process that [led] to the ultimate determination to deny [the p]laintiff's application for asylum and refer her for removal proceedings." Id.

The Court finds that the Eggleston declaration logically links the elements of the deliberative process privilege to the Assessment. The "predecisional" nature of the Assessment is clear, given that it predated and formed the basis for Immigration's decision to deny the plaintiff's asylum application. So too is the "deliberative" element satisfied. Indeed, with respect to the Assessment's factual summary of the Asylum Officer's interview with the

6

plaintiff, the Eggleston declaration describes this as a "distillation" that "does not purport to be a verbatim transcript of the [p]laintiff's asylum interview," but rather is "a selective recording of information the [Immigration] asylum officer deemed particularly pertinent to [the p]laintiff's request for asylum." Def.'s Mem., Ex. 1 (Eggleston Decl.) ¶ 24. Such factual recitations qualify as deliberative. See Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 513-14 (D.C. Cir. 2011) (deeming privileged "factual summaries contained in [agency] reports [which] 'were culled by the [agency] from the much larger universe of facts presented to it' and reflect an 'exercise of judgment as to what issues are most relevant to the pre-decisional findings and recommendations'") (citation omitted). As for the portions of the Assessment containing the Asylum Officer's analysis of the credibility of the plaintiff's claims and recommendation that she be denied asylum, this is quintessential deliberative information, i.e., "'recommendations and deliberations comprising part of a process by which governmental decisions . . . are formulated.'" Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (citation omitted). There being no contrary evidence or proof of bad faith on the agency's part, the Eggleston declaration suffices to carry the defendant's burden at the summary judgment stage. See Ancient Coin Collectors Guild, 641 F.3d at 509 ("Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.").

The plaintiff challenges the defendant's invocation of the deliberative process privilege on several grounds, none of which are persuasive. First, she asserts that the Eggleston declaration is deficient because it does not state that Eggleston is familiar with the general asylum process or that she has personally reviewed the Assessment. Pl.'s Opp'n at 6. However, the extent of Eggleston's knowledge of the asylum process is largely irrelevant. What matters is her capacity to explain the legal basis for the defendant's withholding of the Assessment under

the FOIA, which, as explained above, she has done adequately.  As for Eggleston's familiarity with the Assessment, the last paragraph of her declaration explicitly states that she is "familiar with the records described in this [d]eclaration," and that she "attest[s] to the accuracy of the document descriptions and applicability of the FOIA exemptions asserted."  Def.'s Mem., Ex. 1 (Eggleston Decl.) ¶ 27.  Nothing more is required, and the plaintiff has cited no authority to the contrary.

Second, the plaintiff asserts that the declaration fails to provide sufficient contextual detail about the role the Assessment played in Immigration's asylum determination.  Pl.'s Opp'n at 7.  It is true that an agency invoking the deliberative process privilege "must describe not only the contents of the document but also enough about its context, viz. the agency's decisionmaking process, to establish that it is a pre-decisional part thereof."  SafeCard Servs., 926 F.2d at 1204.  And the Eggleston declaration provides such contextual information.  Specifically, it states that the Assessment "form[ed] the basis for [Immigration's] decision to not grant the [p]laintiff asylum to the [p]laintiff and instead refer her to an immigration judge for removal proceedings."  Def.'s Mem., Ex. 1 (Eggleston Decl.) ¶ 24.  The plaintiff even acknowledges that this was the function of the Assessment in her opposition to the defendant's statement of material facts.  See Pl.'s Facts Opp'n ¶ 14 (The "plaintiff admits that the asylum officer made an analysis [in the Assessment], and 'based on this analysis, [Immigration] denied the [p]laintiff's application for asylum.'").  It is, therefore, no mystery what role the Assessment played in the agency's deliberative process.

Third, the plaintiff contends that the Eggleston declaration fails to show that disclosure of the Assessment would harm the agency.  Pl.'s Opp'n at 8-12.  As the Circuit recently explained in rejecting this specific argument, "Congress enacted FOIA Exemption 5 . . . precisely because

it determined that disclosure of material that is both predecisional and deliberative <u>does</u> harm an agency's decisionmaking process" by "inhibit[ing] frank discussion of policy matters and likely impair[ing] the quality of decisions." <u>McKinley</u>, 647 F.3d at 339 (emphasis in original and citation omitted). It is not the role of the courts to "second-guess that congressional judgment on a case-by-case basis"; rather, once it is determined that the two elements of the deliberative process privilege are satisfied, the judicial inquiry is complete. <u>Id.</u> Having found that both elements of the privilege are satisfied here, the Court need not independently evaluate whether disclosure of the Assessment would harm the agency.

Fourth, the plaintiff argues that the Assessment is akin to "secret law" that the agency is obliged to disclose. Pl.'s Opp'n at 17-22. She invokes a line of cases holding that "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980); <u>see also</u> <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 161 (1975) ("[I]f an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum" cannot be withheld under Exemption 5.). In determining "[w]hether a document has in fact been 'adopted' by an agency," the Court must examine "the function and significance of the document in the agency's decisionmaking process." <u>Pub. Emps. for Envt'l Responsibility v. U.S. Section Int'l Boundary & Water Comm'n</u>, 839 F. Supp. 2d 304, 322 (D.D.C. 2012). "This type of determination is necessarily fact-dependent, but it is also driven by a 'strong theme' in this circuit's opinions that an 'agency will not be permitted to develop a body of secret law, used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a

veil of privilege because it is not designated as formal, binding, or final.'" Id. at 322-23 (quoting Coastal States, 617 F.2d at 867); accord Sec. Fin. Life Ins. v. Dep't of Treasury, No. 03-cv-102, 2005 WL 839543, at *7 (D.D.C. Apr. 12, 2005) ("Cases that have addressed whether an agency informally adopted a predecisional document generally have focused on whether the documents are used by an agency as secret law or working law.") (collecting cases).

The plaintiff has not shown that the Assessment was formally or informally adopted as the agency position on an issue. On the contrary, given that the plaintiff was ultimately granted asylum, it appears that the agency's final position on the asylum issue was the opposite of what the Asylum Officer recommended in the Assessment. The Assessment is best characterized, then, as an interlocutory opinion issued prior to the initiation of the plaintiff's immigration court proceedings.

Nor has the plaintiff shown that the agency used the Assessment as its "working law" or "secret law." Compare, for example, the facts of this case to those of Coastal States, where the Department of Energy withheld pursuant to the deliberative process privilege "memoranda from regional counsel to auditors working in [the agency's] field offices, issued in response to requests for interpretations of regulations within the context of particular facts encountered while conducting an audit of a firm." 617 F.2d at 858. In rejecting the agency's assertion of privilege, the Circuit reasoned:

> The evidence strongly supports the district court's conclusion that, in fact, these opinions were routinely used by agency staff as guidance in conducting their audits, and were retained and referred to as precedent. If this occurs, the agency has promulgated a body of secret law which it is actually applying in its dealings with the public but which it is attempting to protect behind a label. This we will not permit the agency to do. . . . These documents, whatever the formal powers of regional counsel to issue binding interpretations of the regulations, in practice represent interpretations of established policy on which the agency relies in discharging its regulatory responsibilities; withholding them would serve no legitimate policy interest of the government.

Id. at 869.  In contrast to the memoranda in Coastal States, there is no indication here that the agency treats Assessments as binding, precedential guidance in asylum adjudications.  Instead, Assessments are case-by-case, fact-intensive determinations of whether a particular applicant presents a credible claim for asylum.  See Def.'s Mem., Ex. 1 (Eggleston Decl.) ¶ 21.  This type of document does not implicate the "secret law" concerns raised in Coastal States.[2]

In short, the Eggleston declaration suffices to sustain the agency's claim of privilege, and none of the plaintiff's arguments to the contrary are persuasive.  The Court will therefore grant summary judgment to the defendant as to the propriety of its withholding of the Assessment pursuant to FOIA Exemption 5.

## 2.     Segregability

Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  So important is this requirement that "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld."  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007) (emphasis added and citations omitted). Although the agency "must provide a 'detailed justification' for its non-segregability," it "is not required to provide so much detail that the exempt material would be effectively disclosed."

---

[2] The plaintiff also argued in her opposition brief that the defendant's planned use of the Assessment during the immigration proceedings waived the privilege.  Pl.'s Opp'n at 14.  As noted, however, the defendant did not use the Assessment during those proceedings, which concluded in November 2012, see Status Report ¶¶ 1-2, so this argument is now moot.

Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data, 566 F.2d at 261).

The Eggleston declaration provides the following description of the agency's segregability efforts in general: "All responsive documents were reviewed with an eye toward providing the fullest possible disclosure and, in furtherance of this goal, received a line-by-line examination in an effort to identify all reasonably segregable, unprivileged, nonexempt portions for release to the requester."  Def.'s Mem., Ex. 1 (Eggleston Decl.) ¶ 27.  And with respect to the Assessment in particular, the declaration states:

> The factual portions of the Assessment to Refer cannot be severed from its context and thus must remain exempt from disclosure.  The factual distillation in the Assessment to Refer does not purport to be a verbatim transcript of the [p]laintiff's asylum interview.  Rather it appears to reflect a selective recording of information the [Immigration] asylum officer deemed particularly pertinent to [the p]laintiff's request for asylum.  As such, the Assessment to Refer document contains factual matter that cannot be severed from its context and is exempt from disclosure pursuant to Exemption 5 of the FOIA.

Id. ¶ 24.  The plaintiff claims that this description is insufficient on the grounds that it is conclusory, does not state what proportion of the Assessment is non-exempt, and fails to explain why the factual portions of the Assessment cannot be segregated.  See Pl.'s Opp'n at 12.

The Court concludes that the defendant has provided an adequate justification for the non-segregability of the Assessment.  As the Circuit has recognized, an agency affidavit that (1) describes "each document withheld," (2) notes "the exemption under which it was withheld," and (3) states that an agency official "personally conducted a line-by-line review of each document withheld in full and determined that no documents contained releasable information which could be reasonably segregated from the nonreleasable portion" is "sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document [could not] be further segregated."  Johnson, 310 F.3d at 776 (internal quotation marks and citation omitted).  The

Eggleston declaration meets these criteria.  It describes the Assessment in general terms, invokes the deliberative process privilege, and states that the agency conducted a line-by-line review of the document to ensure that it contained no segregable, nonexempt information.  It further states that any "purely factual" portions of the Assessment could not be extracted from the document without revealing the asylum officer's discretionary prioritization of pertinent facts.  As previously noted, such factual information is protected by the deliberative process privilege.  See Ancient Coin Collectors Guild, 641 F.3d at 513-14.  Thus, the Court finds the plaintiff's segregability challenges unavailing, and deems the Eggleston declaration sufficient to discharge the agency's segregability obligations.

### 3.      The Defendant's Responses to the Plaintiff's FOIA Request at the Administrative Level

The plaintiff also contends that the defendant failed to respond to her FOIA requests at the administrative level in accordance with 5 U.S.C. § 552(a)(6)(A)(i),[3] which provides that agencies shall, upon receiving a FOIA request, "determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor."  By way of background, the plaintiff submitted her FOIA request on June 29, 2011, and the defendant acknowledged receipt of the request by letter dated July 8, 2011.  Def.'s Facts ¶¶ 1-2.  The defendant then sent the plaintiff a letter dated September 14, 2011, explaining that it had "completed the review of all documents and [had] identified 258 pages that [were] responsive to [the plaintiff's] request."  Def.'s Mem., Ex. 1 (Eggleston Decl.), Ex. C.  The letter also states that the agency "determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(5),

---

[3] Although the plaintiff initially asserted this claim under both the FOIA and the APA, see Pl.'s Opp'n at 26, she withdrew her APA claim in her reply brief and clarified that the claim is being made solely under the FOIA, see Pl.'s Reply at 2, 10.

(b)(6), (b)(7)(C) and (b)(7(e) of the FOIA."  Id.  It then describes, in cursory terms, the bases for

the agency's invocation of these FOIA exemptions.  Id.  The plaintiff administratively appealed

the defendant's September 14, 2011 determination, which the defendant summarily denied by

letter dated December 21, 2011.  Def.'s Mem., Ex. 1 (Eggleston Decl.), Ex. E.

The plaintiff argues that, in violation of 5 U.S.C. § 552(a)(6)(A)(i), the defendant's letters

from September and December 2011 did not adequately explain the reasons for its withholding

of documents, and that the Eggleston declaration, submitted after the plaintiff filed this lawsuit,

provided new information concerning the defendant's withholdings that should have been

disclosed at the administrative level.  See Pl.'s Opp'n at 25-29.  As relief for these purported

violations, the plaintiff asks the Court to "make a finding that this conduct by the agency violates

the FOIA, and order the agency to stop doing so again in the future."[4]  Pl.'s Reply at 12; Pl.'s

Opp'n at 29.

While not explicitly framed as such, the plaintiff appears to be seeking a declaratory

judgment that the defendant's administrative responses to her FOIA request violated 5 U.S.C. §

552(a)(6)(A)(i), and an injunction barring such violations in the future.  The defendant fails to

respond directly to these arguments in its reply brief,[5] see generally Def.'s Reply, so the Court

will order supplemental briefing on this issue.

---

[4] The plaintiff does not appear to be contending that the defendant's purportedly inadequate administrative responses to her FOIA request affect this Court's review of the agency's withholding of the Assessment under Exemption 5. If, however, that is the argument being made, it fails as a matter of law.  See Mead Data, 566 F.2d at 251 (rejecting the argument that an agency's failure to provide a sufficient explanation for its withholdings at the administrative level required reversal of the district court's holding that the requested information was exempt, because, "[i]n a FOIA action the district court is not limited to review of the quality of agency decision-making"; rather, "[i]t decides a claim of exemption de novo").

[5] Although the defendant does assert that the plaintiff "cannot challenge the administrative process on any grounds," Def.'s Reply at 13 (emphasis added), it cites no authority in support of this sweeping proposition.  This argument is also undermined by Circuit precedent.  See Webb v. HHS, 696 F.2d 101, 107 n.46 (D.C. Cir. 1982) (rejecting the argument that "a court in a FOIA case" is precluded "from reviewing the procedures followed by an agency at the administrative level").

### IV.  CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted with respect to the plaintiff's APA and due process claims, and as to the propriety of the defendant's withholding of the Assessment in full pursuant to FOIA Exemption 5.  However, pending further briefing from the parties, the defendant's motion is otherwise denied without prejudice, and the plaintiff's motion for summary judgment is denied without prejudice as well.

**SO ORDERED** this 24th day of January, 2013.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.